DAVID TYKULSKER, ESQ.
DAVID TYKULSKER & ASSOCIATES
161 Walnut Street
Montclair, New Jersey 07042
(973) 509-9292
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HUBERT LOWERY, | : | Case No. |
| Plaintiff, | : | Civil Action |
| v. | : | |
| YORAM KOBY and JYK, INC., | : | |
| Defendants. | : | **COMPLAINT AND JURY DEMAND** |
| | : | |

### SUMMARY OF CASE

1.    Plaintiff brings this action to rectify Defendants' failure to pay minimum wage and premium pay for hours worked in excess of 40, as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and the New Jersey Wage and Hour Law ("WHL"), N.J.S.A. 34:11-56a1 *et seq.*, and to redress Defendants' retaliatory discharge of Plaintiff for complaining about Defendants' pay practices to the New Jersey Department of Labor in violation of the FLSA and the Conscientious Employees' Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.*

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over the FLSA claims per 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

3.  This Court has supplemental jurisdiction over the WHL and CEPA claims per 28 U.S.C. § 1367.

4.  Venue is appropriate in this Court per 28 U.S.C. § 1391(b)(1) as defendant Yoram Koby resides at 44 Rio Vista Drive, Alpine, County of Bergen, New Jersey, 07620, and defendant JYK, Inc. has a principal place of business at 4650 Highway 9 South, Howell, New Jersey, 07731.

## PARTIES

5.  Plaintiff Hubert Lowery currently resides in Ocean County, New Jersey, and has a mailing address of P.O. Box 330, Adelphia, New Jersey, 07710.

6.  Defendant JYK, Inc., is a foreign for-profit corporation with a principal place of business at 4650 Highway 9 South, Howell, New Jersey 07731.

7.  Defendant Yoram Koby resides at 44 Rio Vista Drive, Alpine, County of Bergen, New Jersey 07620.

8.  Upon information and belief, at all times relevant, Defendant Koby had the power to hire and fire employees, set employees' wages, retain time and/or wage records, and otherwise control the terms and conditions of employees' employment at Defendant JYK's enterprises, including but not limited to the Blue Moon Motel, 4650 Rt. 9, Howell, New Jersey ("Blue Moon").

9.  Upon information and belief, at all times relevant, Defendant Koby has had the power to stop any illegal pay practices at Defendant JYK's enterprises, including but not limited to the Blue Moon.

## STATEMENT OF FACTS

10.    Defendant Koby is the Chief Executive Officer of Defendant JYK.

11.    As of on or about March 8, 2010, JYK bought the Blue Moon.

12.    As of the date of purchase i.e. on or about March 8, 2010, Plaintiff commenced work for
       JYK as an employee at the Blue Moon.

13.    Plaintiff was an "employee" of Defendant JYK within the meaning of 29 U.S.C. §203, as of
       the date of purchase i.e. on or about March 8, 2010.

14.    Plaintiff was an "employee" of Defendant Koby within the meaning of 29 U.S.C. §203, as
       of the date of purchase i.e. on or about March 8, 2010.

15.    Plaintiff was an "employee" of Defendant JYK within the meaning of N.J.S.A. 34:11-
       56a1(h) as of the date of purchase i.e. on or about March 8, 2010.

16.    Plaintiff was an "employee" of Defendant Koby within the meaning of N.J.S.A. 34:11-
       56a1(h) as of the date of purchase i.e. on or about March 8, 2010.

17.    As of the date of purchase i.e. on or about March 8, 2010, Defendant JYK was Plaintiff's
       "employer" within the meaning of 29 U.S.C. §203.

18.    As of the date of purchase i.e. on or about March 8, 2010, Defendant Koby was Plaintiff's
       "employer" within the meaning of 29 U.S.C. §203.

19.    As of the date of purchase i.e. on or about March 8, 2010, Defendant JYK was Plaintiff's
       "employer" within the meaning of N.J.S.A. 34:11-56a1(g).

20.    As of the date of purchase i.e. on or about March 8, 2010, Defendant Koby was Plaintiff's
       "employer" within the meaning of N.J.S.A. 34:11-56a1(g).

3

21.     The Defendants, separately and jointly, knew or should have known he or it was required by the WHL and/or the FLSA to pay Plaintiff a minimum wage of $7.25 per hour.

22.     The Defendants separately and jointly, knew or should have known that he or it was required by the WHL and/or the FLSA to pay Plaintiff at least one and one-half times his hourly wage when he worked in excess of 40 hours per week.

23.     The Defendants, separately and jointly, knew or should have known that he or it was required by the WHL and/or the FLSA to maintain accurate records of the amount of wages paid to Plaintiff, and any benefits paid to Plaintiff.

24.     The Defendants, separately and jointly, knew or should have known that he or it was required by the WHL and/or the FLSA to maintain accurate records of the hours worked by Plaintiff.

25.     The Defendants, jointly and separately, knew or should have known that he or it was required by the WHL and FLSA to post notices informing employees of their rights under these statutes.

26.     As a matter of practice and policy, each of the Defendants, individually and collectively, did not post notice to inform employees of their rights under the WHL.

27.     As a matter of practice and policy, each of the Defendants, individually and collectively, did not post notice to inform employees of their rights under the FLSA.

28.     Defendants fixed Plaintiff's wages, as of the date of Defendant JYK's purchase of the Blue Moon, at $350.00 per week.

29.     Defendants raised Plaintiff's wages to $400.00 per week as of on or about July 4, 2010.

30.     Defendants paid Plaintiff in cash.

4

31.     For most of his tenure, Plaintiff was the sole employee of the Blue Moon. His job duties included all cleaning, maintenance, assisting contractors remodeling the premises and cleaning up after them, depositing monies, ordering supplies, check-in of guests and rental receipt duties at the Blue Moon.

32.     In early September 2010, Defendants directed Plaintiff to pick-up employees of another motel they owned, the Econolodge in Lakewood, New Jersey (now known as the Grand Motel) to transport them to the Blue Moon.  One employee worked approximately three hours a day housekeeping five days per week.  Another employee worked on Sundays for 6 hours, covering Plaintiff while at church.  However, Plaintiff's job duties remained essentially the same during this period.

33.     Defendants required Plaintiff to be physically present and working at the Blue Moon at all times seven days per week, except when picking up supplies or making bank deposits, or occasionally for short breaks to pick up some food or get his clothes cleaned.

34.     Defendants required Plaintiff to commence work starting at 6:00 a.m. and to be continuously working until midnight.

35.     Plaintiff was on call from midnight until 6:00 a.m.  During this time he was expected to be available to respond to guests and others, including checking customers in; answering the motel office telephone and responding to customer requests for services in the room. Plaintiff did in fact perform services during these late night hours for Defendants on average five times per week.

36.     On Sundays, Defendants permitted Plaintiff to spend six hours away from the Blue Moon premises to attend church.

5

37.    In addition to these 120 hours per week, defendants required Plaintiff to attend to the needs and requests of the Blue Moon's customers after 5:00 p.m.  Defendants required Plaintiff to live at the Blue Moon in order to respond to these off-hour duties.

38.    Primarily for their own benefit, and primarily not for Plaintiff's benefit, Defendants provided Plaintiff with lodging at the Blue Moon during his employment.

39.    Defendants' pay practices with regard to plaintiff violated the FLSA and the WHL.

40.    Defendants' violations of the FLSA were wilful.

41.    Plaintiff complained about the inadequacy of his wages to the New Jersey Department of Labor and Workforce Development ("DOL") in early August, 2010.

42.    Upon learning of Plaintiff's complaint to the DOL, defendant Koby threatened Plaintiff.

43.    On or about September 22, 2010, Defendants discharged Plaintiff in retaliation for his making his complaint to the DOL.

44.    As a direct and proximate result of his wrongful discharge, Plaintiff has suffered damage, and will suffer additional damage in the future.

### COUNT I (FLSA wage)

45.    Plaintiff repeats all of the foregoing as if fully set forth herein.

46.    Defendants' pay practices violate the FLSA.

**WHEREFORE,** Plaintiff demands judgment of Defendants, jointly and severally:

a.    Declaring that Defendants' pay practices violate the FLSA

b.    Compensating Plaintiff for unpaid minimum wages and overtime;

c.    Providing liquidated damages for these violations

6

d.      Granting him his attorney's fees and all costs of suit; and

e.      Securing him such other relief as this Court deems just and meritorious.

## COUNT II (WHL)

47.     Plaintiff repeats all of the foregoing as if fully set forth herein.

48.     Defendants' pay practices violate the WHL.

**WHEREFORE,** Plaintiff demands judgment of Defendants, jointly and severally:

a.      Declaring that Defendants' pay practices violate the WHL;

b.      Compensating plaintiff for unpaid minimum wages and overtime;

c.      Awarding him prejudgment interest;

d.      Granting him his attorney's fees and all costs of suit; and

e.      Securing him such other relief as this Court deems just and meritorious.

## COUNT III (FLSA retaliation)

49.     Plaintiff repeats all of the foregoing as if fully set forth herein.

50.     Defendants' wrongfully discharged Plaintiff for making a complaint to the DOL in violation
of the FLSA.

**WHEREFORE,** Plaintiff demands judgment of Defendants, jointly and severally:

a.      Declaring that Defendants' discharge of Plaintiff violated the FLSA;

b.      Providing appropriate equitable relief;

c.      Making Plaintiff whole through an award of compensatory damages;

d.      Awarding him punitive damages;

e.      Granting him his attorney's fees and all costs of suit; and

f.      Securing him such other relief as this Court deems just and meritorious.

7

## COUNT IV (CEPA)

51.   Plaintiff repeats all of the foregoing as if fully set forth herein.

52.   Defendants' wrongfully discharged Plaintiff for making a complaint to the DOL in violation

of CEPA.

**WHEREFORE,** Plaintiff demands judgment of Defendants, jointly and severally:

a.   Declaring that Defendants' discharge of Plaintiff violated CEPA;

b.   Providing appropriate equitable relief;

c.   Making Plaintiff whole through an award of compensatory damages;

d.   Awarding him punitive damages;

e.   Granting him his attorney's fees and all costs of suit; and

f.   Securing him such other relief as this Court deems just and meritorious.

RESPECTFULLY SUBMITTED

/s David Tykulsker
DAVID TYKULSKER, Esq.
David Tykulsker & Associates
161 Walnut Street
Montclair, NJ 07042
(973) 509-9292 (phone)
(973) 509-1181 (fax)
david@dtesq.com

## JURY DEMAND

Plaintiffs demand trial by jury of all issues so triable.

/s David Tykulsker
DAVID TYKULSKER, Esq.

8

## **L.Civ.R. 11.2 CERTIFICATION**

With the exception of the above-referenced DOL administrative complaint, Docket No. WC-1851-1210-STE, which I understand is currently pending,  I certify that I am not aware of any other court case, arbitration or administrative proceeding involving the matter in controversy herein.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on September 1, 2011.

/s David Tykulsker
DAVID TYKULSKER, Esq.