UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUBERT LOWERY,<br><br>   **Plaintiff,**<br><br>v.<br><br>YORAM KOBY and JYK, INC.,<br><br>   **Defendants.** | Civ. No. 11-5088 (KM)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Hubert Lowery, brings this action claiming that the defendants, his employers, have failed to meet minimum wage and overtime pay requirements as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.* (Dkt. No. 1 ("Cplt.")) Lowery also alleges that defendants fired him in retaliation for reporting their pay practices to the New Jersey Department of Labor ("DOL"), in violation of the FLSA and the Conscientious Employees' Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.*

Before this Court are the defendants' motion for partial summary judgment and the plaintiff's cross-motion for partial summary judgment. (Dkt. Nos. 45, 51) For the reasons set forth below, I will deny both.[1]

### I. FACTUAL BACKGROUND

The plaintiff, Hubert Lowery, is a former employee of the Blue Moon Motel, which is owned and operated by the defendants, Yoram Koby and JYK, Inc. (Cplt. ¶¶ 10-12). Koby is the sole shareholder of JYK. (Dkt. No 45 p. 3)

---

[1] Plaintiffs have also filed a motion *in limine* (Dkt. No. 47), which will be administratively terminated and decided closer to the date of trial, which has not yet been set.

Lowery began working at the Blue Moon Motel around January 2005, and he continued working at the motel when the defendants purchased it from the previous owner in March of 2010. (Dkt. No. 51 p. 1) Lowery alleges that he was usually the sole employee at the motel after that time, and he contends that he was expected to be available almost 24 hours a day. (*Id.*) Lowery lived at the hotel, and allegedly could not leave without Koby's permission. (Cplt. ¶ 38, Dkt. No. 51 p. 1) Lowery asserts that he was not compensated as required by law for the hours that he worked. (Dkt. No. 51 p. 1)

On August 16, 2010, Lowery filed a complaint with the New Jersey DOL. (Dkt. No. 45-14) Defendants acknowledge that they were aware of the DOL complaint as of September 20, 2010. (Dkt. No. 45 p. 6)[2] Lowery alleges that on September 22, 2010, defendant Koby fired him. (Cplt. ¶ 43) Defendants contend that Koby did not fire Lowery, and that any statements that could be "construed as a termination of the Plaintiff" were rescinded. (Dkt. No. 45 p. 14) Defendants assert that Koby told Lowery that he wanted him to remain employed and asked him repeatedly if he was planning to continue working at the motel. (Dkt. No. 45 p. 14) Lowery, say the defednants, was non-committal about his plans and ultimately "stopped working for the Defendants because he no longer wanted to." (*Id.*) On October 7, 2010, however, the defendants sent Lowery a letter stating that they "wish to hereby terminate [his] employment as manager/superintendant of the motel" and instructing him to vacate the premises. (Dkt. No 45-18)

In short, Lowery alleges that he was fired by the defendants in retaliation for his complaint to the DOL. Defendants (1) deny that Lowery was fired at all and (2) deny that that the termination, if it occurred, was related to Lowery's DOL complaint. Instead, defendants point to numerous other issues with Lowery's behavior that would have justified termination. Both sides have submitted evidence, including transcripts of in-person and telephone

---

2   Plaintiff contends that defendants knew of it by September 2, 2010. *See* Dkt. No. 51-2 ¶ 61.

2

conversations that Lowery recorded, in support of their interpretations of the events. (Dkt. Nos. 45-10, 51-7)

As discussed below, I will deny both motions for summary judgment because this case is replete with factual disputes.

## II. DISCUSSION

### A. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654,

657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

### B. Retaliation Claims

Defendants have asked the Court to enter summary judgment in their favor as to plaintiff's retaliation claims under CEPA and the FLSA. Plaintiff has opposed the motion and moved for partial summary judgment as to one aspect of these claims. The requirements for establishing a retaliation claim under either CEPA or the FLSA are analogous, and I analyze them together.

CEPA was enacted to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431, 650 A.2d 958, 971 (1994). To effectuate that aim, the statute provides, in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee ... [d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer ... that the employee reasonably believes ... is in violation of a law.

N.J.S.A. 34:19–3(a)(1). A retaliatory action is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19–2(e).

4

Similarly, the FLSA instructs that employers may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint" related to the statute. 29 U.S.C. § 215(a)(3). A "complaint" is "filed" when the employee makes a written or oral statement that is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute." *Kasten v. St. Gobain Performance Plastics*, 51 U.S. 1, 15 (2011).

Unlawful retaliation under either CEPA or the FLSA is analyzed within the *McDonnell Douglas* burden-shifting framework.[3] *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Winters v. N. Hudson Reg'l Fire & Rescue*, 212 N.J. 67, 90, 50 A.3d 649, 662 (2012) (*McDonnell Douglas* framework applies to CEPA claims); *Cononie v. Allegheny Gen. Hosp.*, 29 Fed. App'x 94, 95 (3d Cir. 2002)(FLSA claims analyzed pursuant to *McDonnell Douglas* rubric). Under this test, "the employee carries the initial burden of establishing a *prima facie* case of retaliation." *Winters*, 212 N.J. at 90, 50 A.3d at 662 (citation omitted). The burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* (internal quotations and citation omitted). If the employer can do so, "the presumption of retaliatory discharge created by the *prima facie* case disappears and the burden shifts back to the [employee]." *Id.* (quoting *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999)). The employee then must persuade the "fact finder that the employer's reason was false and that [retaliation] was the real reason." *Id.* (internal quotations and citation omitted). The ultimate burden of proof remains with the employee. *Id.*

---

[3]   Both sides address the retaliation claim within the *McDonnell Douglas* framework. I will do the same. Plaintiff's states in passing that he need not meet this threshold because there is direct evidence of retaliatory intent, but the argument is not developed. *See* Dkt. No. 51 p. 9; *see, e.g., Maxfield v. Sinclar Intern.*, 766 F.2d 788, 793 n.2 (3d Cir. 1985)(because plaintiff established circumstantial case of discrimination under *McDonnell Douglas* framework court declined to address the direct evidence argument).

5

### a. *Prima Facie* Case

To establish a cause of action for retaliation under CEPA, a plaintiff must demonstrate four elements: (1) he had a reasonable belief that his employer's conduct violated a law, regulation, or clear mandate of public policy; (2) he performed a "whistle-blowing" activity under the act; (3) the employer took an adverse employment action against the plaintiff; (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Dzwonar v. McDevitt*, 177 N.J. 451, 828 A.2d 893, 900 (N.J. 2003); *Samowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 404 (3d Cir. 2007).

In parallel, to assert a claim for retaliatory discharge under the FLSA a plaintiff must show: (1) the plaintiff engaged in a FLSA protected activity; (2) the employer undertook an adverse employment action against the plaintiff; and (3) a causal link exists between the protected activity and the adverse action. *Zielinksi v. City of Wildwood*, No. 12–7195, 2014 WL 6991388, at *4 (D.N.J. Dec. 10, 2014) (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

When it comes to the plaintiff's *prima facie* case of retaliation, defendants concede that the plaintiff engaged in protected activity under CEPA and the FLSA when he filed a complaint with the DOL. (Dkt. No. 45 pp. 11-12) Defendants contend, however, that plaintiff has not demonstrated the remaining elements of his *prima facie* case: (1) that he suffered an adverse employment action, and (2) that any such adverse employment action is causally related to his filing of the DOL complaint. *Id.*

### i. Adverse Employment Action

CEPA defines a "retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19–2(e). Interpreting that language, courts have held that the employer's action must either affect the employee's compensation or rank, or "be virtually equivalent to discharge." *Klein v. Univ. of Med. & Dentistry of New Jersey*, 377 N.J. Super.

6

28, 871 A.2d 681, 691 (App. Div. 2005) (internal quotations and citation omitted); *see also Caver v. City of Trenton*, 420 F.3d 243, 249 (3d Cir. 2005).

Similarly, retaliatory conduct rises to the level of a materially adverse action under the FLSA if the conduct alters the "employee's compensation, terms, conditions or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Wildi v. Alle-Kiski Medical Center*, 659 F.Supp.2d, 665 (W.D. Pa. 2009) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997)).

Both parties have moved for summary judgment as to the issue of whether Lowery was terminated. Termination, if established, would qualify as an adverse employment action under the FLSA and CEPA. Accordingly, I must take the facts and inferences in each side's favor and determine if a material factual dispute remains as to that side's respective version of the events. It is clear from the parties' submissions that this issue is material and highly contested—and has been since the alleged termination occurred. Moreover, the resolution of this factual dispute is dependent on several related, overlapping issues. It follows that summary judgment must be denied.

First, viewing the facts in plaintiff's favor, there is plainly evidence to support their contention that Lowery was fired. Most obviously, defendants' lawyer sent Lowery a letter on October 7, 2010, stating that defendants "wish to hereby terminate your employment." (Dkt. No. 45-18) In addition, certain excerpts from defendant Koby's deposition and the recorded conversations point in this direction. For example, at his deposition, Koby stated, "I discharged [Lowery] on September 22, yes." (Dkt. No. 45-5 p. 26) During a recorded call, Koby said to Lowery, "You want to work only eight hours, very good. Get out. You're not going to sleep in my place and work eight hours for me." (Dkt. No. 51-5 p. 19) During another excerpt, Koby said, "And I don't need you no more your services." (Dkt. No. 45-10 p. 19) These are just samples of the relevant evidence, but they are sufficient to establish a factual issue in plaintiff's favor.

Next, viewing the evidence in defendants' favor, a material issue remains as to whether defendant chose to stop working of his own volition rather than being discharged. Defendants argue that even if statements to Lowery could be construed as constituting termination, that Lowery was offered reinstatement, rejected it, and refused to tell defendants whether he planned to remain employed. Defendants argue that plaintiff's action constituted "voluntary abandonment" of his position. (Dkt. No. 45 p. 20) There are multiple pieces of evidence supporting defendant's version of the facts.

At one point, Lowery says, "Okay, Koby, so you're firing me." Koby responds, "I'm not firing you ... Leave the premises after eight hours. I'm not firing you." (Dkt. No. 45-10 pp. 14-15) Defendants argue that this was their attempt to remediate Lowery's complaints about working in excess of eight hours while keeping him employed. Later, Koby asks Lowery, "Do you like to stay? Do you like to leave? What do you want to do? Tell me." Lowery says, "I haven't really sat down and figured it out yet ... I'll definitely give you an answer by today, Koby." (*Id.* p. 18) Defendants argue that Lowery refused to commit to continued employment, and in effect, quit. Later, Koby asks, "[Y]ou decided that you're going?" Lowery replies, "No, I never quitted, You told me last night you no longer need my services and you said – ." Koby insists, "I did not say anything to you. Do you want to stay or you want to go?" (*Id.* p. 20) Throughout their recorded conversations, Koby and Lowery have other circular exchanges about whether Lowery was fired or had quit. *See* Dkt. No. 45-10. It is a permissible inference that Lowery wished to quit; alternatively, each might have been attempting to provoke a break that could be blamed on the other; alternatively, Koby might have intended to terminate Lowery over his objection.

The evidence conflicts as to whether, when, and how Lowery was terminated; whether Lowery was offered reinstatement; whether any offer of reinstatement was reasonable; and whether Lowery quit working rather than being discharged. Those issues are material and highly fact-dependent, and they are not appropriately resolved on summary judgment.

### ii. Causal Connection

Defendants also contend that they are entitled to summary judgment on plaintiff's retaliation claims because plaintiff cannot establish the last element of his *prima facie* case—a causal link between Lowery's complaint to the DOL and the allegedly retaliatory firing.[4] Again, plaintiffs have put forth evidence sufficient to create a material issue of fact as to causation.

Under CEPA, "to demonstrate causation, a plaintiff must show that the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" *Robles v. U.S. Environmental Universal Services, Inc.*, 469 Fed. App'x 104, 107 (3d Cir. 2012) (quoting *Donofry v. Autotote Sys., Inc.*, 350 N.J. Super. 276, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001)). Circumstantial factors, including (1) temporal proximity between the protected activity and adverse employment action, and (2) "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action" can create an inference of retaliation. *Zaffuto v. Wal-Mart Stores, Inc.*, 130 Fed. App'x 565, 569 (3d Cir. 2005); *Maimone v. City of Atlantic City*, 188 N.J. 221, 903 A.2d 1055, 1064 (2006).

With respect to the FLSA, two primary factors, (1) timing and (2) evidence of ongoing antagonism between the employee and employer, are relevant to establishing the causal link required of a *prima facie* case. *Wildi*, 659 F.Supp.2d at 666 (citing *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001)). Though timing may not be sufficient on its own, timing "in conjunction with other types of suggestive evidence, is clearly enough to demonstrate the causal link." *Wildi*, 659 F.Supp.2d at 666 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000)).

Here, plaintiff has provided sufficient circumstantial evidence. As to timing, Defendants admit that they knew of Lowery's complaint to the DOL by

---

[4] Plaintiffs have not moved for summary judgment as to this aspect of the retaliation claim, or the claims in their entirety (only the adverse employment action element discussed *supra*).

9

September 20, 2010, and Lowery has submitted evidence that he was terminated two days later, on September 22, 2010. That was followed just over two weeks later by the October 7, 2010 letter stating that defendants "wish to hereby terminate your employment." (Dkt. No. 51 p. 11) Whether the relevant date is September 22 of October 7, 2010 (again, giving the plaintiff the benefit of all inferences), the time interval is very short and might support an inference of causation.[5]

There is also ample evidence of antagonism between Lowery and Koby in their recorded conversations. For example, Koby admits to having called Lowery a "piece of shit." One excerpt of a recorded in-person conversation appears to suggest a physical confrontation. (Dkt. No. 45-10 p. 27) Lowery says, "Back up," and Koby replies, "Why, what you gonna do?" Lowery asks, "Why you getting close? Sit over there." Koby makes comments suggesting that he was upset that Lowery contacted the DOL. Koby says to Lowery, "Why did you call [the DOL] to try to create the problems ... You hurt me calling the [DOL]." (*Id.* p. 13) During his deposition, Koby described the series of events "leading to [Lowery's] discharge," including the DOL complaint: "You see, it was a chain, it was, I caught him stealing, I put the cameras, his brother moved in, this labor department, bad mouthing...." (Dkt. No 51-6 pp. 7-8)

Lowery, as plaintiff, has clearly put forth sufficient evidence to create a material issue of fact and meet his initial burden as to causation. It follows that plaintiff has made a *prima facie* case of retaliation under CEPA and the FLSA for purposes of the *McDonnell Douglas* analysis.

### b. Legitimate Non-Discriminatory Reason

Under *McDonnell Douglas*, once the plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate a legitimate,

---

[5] If defendants knew about the DOL complaint before September 20, 2010, as plaintiff contends, the time leading up to any alleged adverse action is longer. This would not significantly alter my analysis, however, given the still close-timing of events and presence of other suggestive evidence.

nondiscriminatory reason for the alleged adverse employment action. Here, the defendants have articulated several.

First, defendants argue that Lowery told customers "personal information" about Koby, which they regarded as an act of employee disloyalty or insubordination. (Dkt. No. 45 p. 18) Defendants argue that Lowery unknowingly answered a call from Koby on August 30, 2010, and that Koby heard Lowery telling customers about Koby's fancy cars and Lowery's long hours. (Dkt. No. 45 pp. 18-19) During a recorded conversation, Koby refers to this incident, in which he heard Lowery gossiping "about my BMW, my Bentley, my Rolls, my Mercedes." (Dkt. No. 45-10 p. 4) In his deposition, Koby indicated that Lowery's "bad mouthing" upset him. (Dkt. No. 51-6 p. 5)

Second, defendants point to evidence that Lowery's brother was living at the motel even after defendants had forbidden it. (Dkt. No. 45 p. 18) Around June of 2010, plaintiff's brother was found living at a closed motel which JYK was in the process of taking over. (Dkt. No. 45 p. 23) Lowery's brother, they say, was renting out rooms at the property and keeping the money for himself. (*Id.*) After discovering this, defendants contend, they told Lowery his brother could not stay at the Moon Motel in the future. Lowery is alleged to have ignored that instruction. (*Id.*) Koby referred to this issue in his deposition testimony as well. (Dkt. No 51-6 p. 6)

Third, defendants allege that plaintiff Lowery himself (not his brother) "stole money from the Moon Motel." (Dkt. No. 45 p. 18) They argue that in July of 2010, Koby discovered that Lowery had retained for himself a patron's payment for a room. (Dkt. No. 45 p. 22) Koby allegedly discovered the issue when the customer asked to extend his stay, but Koby could find no record of payment for the prior night's stay. (*Id.* p. 22) Koby confronted Lowery, who produced receipts from that patron, as well as another customer, from Lowery's own room. (*Id.*) Koby says that he then no longer trusted Lowery, and had surveillance cameras installed at the hotel. *Id.*; Dkt. No 51-6 p. 5.

Finally, defendants point to plaintiff's "voluntary abandonment" of his job as grounds for termination. (Dkt. No. 45 p. 20) Specifically, defendants allege that Lowery "refused to commit to continued employment" at the motel, "refused to alter his working conditions to remediate the working conditions he complained of," and was generally insubordinate. See *id.*; *see e.g.*, Dkt. No. 45-10 p. 18. Defendants' argument appears to be that if the October 7, 2010 letter constituted a termination, Lowery's behavior in September 2010 provided a separate, legitimate basis for the firing.

I find that defendants have presented enough evidence to meet their burden of putting forth legitimate, non-discriminatory reasons for the alleged adverse action against Lowery.

### c. Pretext

Under McDonnell Douglas, once the defendant has set forth a legitimate, non-discriminatory reason for the adverse action, the burden shifts back to the plaintiff to submit evidence from which a fact finder could reasonably: "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *Wildi*, 659 F.Supp.2d at 668. The pretext analysis is often "factually inseparable" from the causation element of the *prima facie* case. *Zaffuto*, 130 Fed. App'x at 569 (citing *Donofry*, 350 N.J. Super. at 291-92, 270). Evidence relevant to pretext may include evidence that "demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-[retaliatory] reasons." *Fuentes*, 32 F.3d at 765 (internal quotations and citations omitted); *Wildi*, 659 F.Supp.2d at 668.

Lowery has put forth sufficient evidence for a factfinder to reasonably determine that defendants' proffered reasons for the alleged adverse action

against him are pretext and that retaliation was more likely than not a factor in any adverse action.

First, the disciplinary incidents defendants rely on as legitimate, non-discriminatory reasons—alleged stealing, bad mouthing, and Lowery's brother living on the premises, occurred in the months leading up to the alleged termination. In contrast, defendants appear to have found out about the DOL complaint days or weeks before the alleged termination (depending on when any termination took place and when defendants first learned of the DOL complaint).

More significantly, and as discussed in Section II.B.a.ii, *supra*, defendant Koby has made statements that a factfinder could interpret as support for the argument that Lowery was terminated in connection with the DOL complaint. *See, e.g.*, Dkt. No 51-6 pp. 7-8 (Koby's deposition testimony that the "labor department" was part of the "chain" that "lead to [Lowery's] discharge"). In the recorded conversations with Lowery, Koby makes similar statements. For example, in a portion of a conversation after which Koby had already referenced the DOL complaint, Koby says "You want to play games, that's okay … You want to lose your job? … What you're doing now, is you basically going to lose your job -- … -- after that, you finished." (Dkt. No. 45-10 pp. 13-14). In another instance, Koby says that Lowery had said "horrible things," referring to when Lowery told him he "went to the lawyer." (*Id.* at p. 28)

I find that the evidence Lowery has put forth is sufficient to meet his burden of demonstrating that defendants' legitimate non-discriminatory reasons are pretext. Accordingly, defendants' motion for summary judgment as to plaintiff's CEPA and FLSA retaliation claims is denied.

### C. Damages Issues

Defendants have also moved for summary judgment as to two damages issues. Given the factual issues surrounding liability, any decision as to damages would be premature. I will deny summary judgment on these points.

#### a. Reinstatement

First, defendants claim that Lowery cannot obtain any damages for his claims of retaliation because he rejected defendants' offers of reinstatement. (Dkt. No. 45 p. 25) Defendants claim that had Lowery accepted continued employment with defendants, he would have prevented his alleged damages. (*Id.*) Lowery counters that he was not offered reinstatement by defendants, and if he were, he had no obligation to accept reinstatement to a position where he was not being employed in accordance with the law. (Dkt. No. 51 pp. 14-15).

As discussed in Section II.B.a.i, *supra*, whether Lowery was offered reinstatement, and if so whether his response to the offer was reasonable, are material factual issues that are in dispute. It follows that defendants' motion for summary judgment as to this issue must be denied.[6]

#### b. Impossibility

Defendants also argue that Lowery's damages are limited by impossibility. (Dkt. No. 45 p. 28) Any damages award, they say, must be cut off as of March 9, 2013; on that date, the Moon Motel suffered a fire and it has never reopened. (*Id.*) Defendants argue to award wage-related damages after the date of the fire would put him "in a better position than he would have been in had he remained employed with Defendants." (*Id.*)

I will also deny defendants' summary judgment motion as to this issue. Lowery has put forth evidence that the employee who took over his position at the Moon Motel, Anthony Keene, has worked at another JYK property following

---

[6] Defendants also mention in passing that Lowery's damages should be limited because he failed to mitigate by maintaining employment after his tenure at the Moon Motel ended. (Dkt. No. 45 p. 25) Again, this is a fact-issue appropriate for trial.

14

the fire. (Dkt. No. 51-12 pp. 3-4, 10) Thus, a fact finder viewing the evidence in Lowery's favor could find that if Lowery had remained in his position, he, instead of Keene, would have been reassigned to another property following the fire. Accordingly, summary judgment on this damages issue is not appropriate.

### III.  CONCLUSION

For the foregoing reasons, all motions for partial summary judgment are DENIED. An appropriate order will be entered separately.

*/s/ Kevin McNulty*
**KEVIN MCNULTY**
**United States District Judge**